IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN EDWARD RATHBUN,<br><br>        Petitioner,<br><br>    v.<br><br>K. PROSPER, Warden,<br><br>        Respondent.<br>_____/ | Case No. CIV S-06-1311 VAP (HC)<br><br>**[Petition filed on June 29, 2006]**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS FILED BY A STATE PRISONER** |

## I.   BACKGROUND

Petitioner Steven Edward Rathbun is a state prisoner proceeding in pro se in a habeas corpus action pursuant to 28 U.S.C. § 2254.  The petition was filed on June 29, 2006, and Respondent filed an Answer on October 11, 2006.

On January 5, 2009, the action was transferred to this Court pursuant to an Order of Designation of Judge to Serve in Another District within the Ninth Circuit. On December 1, 2009, the Court granted Petitioner's unopposed motion for leave to file an untimely traverse. After several extensions from the Court, Petitioner filed a traverse on February 19, 2010.

1

2    For the reasons stated below, the Court DENIES the

3 Petition.

4

5 **A.    Statement of Facts**

6      **1.    The Events of January 24, 2000**

7      On January 24, 2000, Petitioner and Julie Robinson

8 were living together in an apartment on the second floor

9 of a four-unit building at 1050 Grand Avenue in

10 Sacramento.  (Lodged Doc. 4 at 529.)   The other unit on

11 the second floor was vacant.  (Id.)   Anna Freeman lived

12 in an apartment on the ground floor of that building.

13 (Id. at 525.)  At approximately 9:40 p.m., Freeman heard

14 a noise coming from the second floor balcony of the

15 building, which she thought sounded like a gunshot.  (Id.

16 at 530.)  She called the property manager, Barbara

17 Lunsford to report the shot.  (Id. at 531.)

18

19      After speaking with Lunsford, Freeman called 911.

20 (Id. at 553.)   Four Sacramento Police Officers, including

21 Christian Prince, arrived at the building at 10:09 p.m.

22 (Id. at 598.)   Prince had been told by the dispatch

23 operator that Petitioner, an active parolee, was a

24 possible suspect. (Id.)   When Prince first approached the

25 apartment, he saw Petitioner sitting on a living room

26 couch, facing him, and watching television.   (Id. at

27 601.)  When Prince turned away to communicate with other

28

2

officers, he heard a "loud bang," which sounded "like
somebody had kicked or -- slammed the door."  (Id. at
603, 686.)  When he turned back towards the apartment,
Petitioner was out of sight.  (Id. at 604-605.)

   Prince knocked on the front door of the apartment,
and identified himself as a police officer.  (Id. at
603.)  Receiving no response, he knocked and identified
himself a second time.  (Id.)

   Petitioner then came to the door; he was shirtless,
"sweating quite profusely," and appeared to Prince to be
"very fidgety" and nervous.  (Id. at 604.)  After
confirming Petitioner's identity and that he was an
active parolee, Prince handcuffed Petitioner and searched
him for weapons, finding a small green Ziploc plastic bag
in Petitioner's pants pocket.  (Id. at 605.)

   Prince told Petitioner and Robinson, who had been in
the shower, about the reported gunshot, and asked them if
there were any guns or other weapons in the house.  (Id.
at 606.)  Both responded "no".  (Id.)  Prince searched
the southeast bedroom in the two bedroom apartment, and
found a .38-caliber revolver in a lidless box, inside a
closet with no door.  (Id. at 606-607.)  The gun was
inside a holster, and Prince noted a scent of gunpowder.
(Id. at 609, 614.)  Prince found four unfired rounds and

one empty shell casing inside the gun, and concluded that a bullet had been fired from the gun based on a firing pin mark on the empty casing.  (<u>Id.</u> at 609-10, 676.) Along with the gun, Prince found 250 small Ziploc bags identical to the one in Petitioner's pants pocket, and two small scales of the type commonly used to measure narcotics.  (<u>Id.</u> at 612-13.)  Affixed to both the gun and one of the scales was an address label with Julie Robinson's name and her previous address.  (<u>Id.</u> at 397-98, 401.)  Near the gun on the floor was a television remote control, which Prince noted was odd, since there was no television in the bedroom.  (<u>Id.</u> at 612-13.)

Petitioner was arrested and taken to Sacramento County Jail.  (<u>Id.</u> at 1010.)

**2.   Evidence Surrounding Ownership of the Gun**

Several persons gave statements and testimony about who may have owned the gun found in the apartment.

In her statement to Officer Warren, Julie Robinson denied hearing any gunshots, and said she presumed the handgun, like all of the property in the apartment, belonged to Petitioner.  (<u>Id.</u> at 586-87.)  She explained that, in the two weeks before the incident, she had been living in the bedroom where the gun was found, and that

1   Petitioner's daughter had been living there before that.

2   (Id. at 445, 586-87.)

3

4        At trial, Julie Robinson stated that someone had

5   recently kicked in the door to the bedroom while she was

6   at work, and, since then, the lock was broken.  (Id. at

7   454-456.)  Occasionally, Petitioner spent the night in

8   that room with Julie, and he spent other nights in the

9   other bedroom in the apartment.  (Id. at 506, 509.)

10  Julie also testified that she had never seen the address

11  labels on the gun or scale, and had no idea how the

12  labels got on those items.  (Id. at 398.)  She noted,

13  though, that, a few days before the incident, Petitioner

14  told her that she "wouldn't have to be worrying about

15  those address labels anymore."  (Id. at 400-01.)

16

17       Julie Robinson also told officers that she was not

18  sure if the gun belonged to her husband, Lester Robinson,

19  with whom she had been living for twelve years before

20  moving to Petitioner's apartment.  (Id. at 398-99, 415.)

21  In that time period, Julie said she never had seen Lester

22  with a handgun, but she acknowledged that she had been

23  told her husband did own a gun.  (Id.)

24

25       In April 2000, defense investigator Wally Damerell

26  told Julie Robinson that Petitioner had mentioned that

27  Lester Robinson had owned multiple guns.  (Id. at 482,

28

484, 945-46.)   According to Damerell, Julie Robinson responded that she had never seen Lester with any guns and that he did not own any guns.  (<u>Id.</u> at 945-46.)   She also said she did not know of any shots being fired the night of the incident.  (<u>Id.</u> at 945.)

In July 2000, while Petitioner was on release from jail, Julie Robinson signed a longer written statement, written out by Damerell.  (<u>Id.</u> at 404, 486.)   In it, she stated the gun found at the apartment could have belonged to her husband, as it came from her previous residence and her husband had owned a gun, and that it did not belong to Petitioner.  (<u>Id.</u> at 463, 913, 949.)   At trial, Julie Robinson admitted she had told Petitioner's nephew, Jason Terrell, that the gun seized from the apartment belonged to Lester Robinson, and that one of Lester Robinson's relatives had previously told her that Lester had a gun in the house.  (<u>Id.</u> at 443-44, 502.)   Terrell similarly testified that, in spring 2000, Julie Robinson told him the gun found in the apartment belonged to Lester and that she had taken it because she did not trust Lester with it.  (<u>Id.</u> at 719.)   Terrell gave this information to Damerell at that time.  (<u>Id.</u> at 943.)

Lester Robinson testified that, while he and Julie had both owned guns during their marriage, neither had ever owned a .38-caliber revolver.  (<u>Id.</u> at 851-52.)   He

denied ever previously having seen the gun seized from the apartment, but identified one of the scales as one that had belonged to him previously and that he had used for weighing methamphetamine.  (<u>Id.</u> at 855, 864.)  Lester also testified that, while awaiting trial, Petitioner had asked him to have his sister, Anita West, falsely testify that she had seen the gun at Lester's house.  (<u>Id.</u> at 860.)  Lester passed this request along to West.  (<u>Id.</u> at 862.)  However, West testified that she had never seen the gun before, including when she helped Julie pack for her move to Petitioner's apartment.  (<u>Id.</u> at 906.)

Petitioner's daughter, Betty (aka "Angel") Rathbun, testified that, shortly before the incident, Julie Robinson had given Angel's boyfriend a small white Derringer pistol in exchange for methamphetamine.  (<u>Id.</u> at 885-86.)  Angel testified at trial that, on that occasion, Julie told her that she first had to take a sticker off the gun, which she did, and threw the sticker out the window of the car in which they were riding. (<u>Id.</u> at 1005.)  Julie also told Angel's boyfriend that she had another larger gun that she would look for for him.  (<u>Id.</u> at 885-86.)  Angel admitted she never mentioned the sticker on the gun to any investigators or attorneys until the night before her testimony.  (<u>Id.</u> at 1008.)

**B.   Procedural History**

    **1.   The Trial**

On October 12, 2000, a jury in the California Superior Court for the County of Sacramento convicted Petitioner of violating California Penal Code section 12021(a)(1), which prohibits felons from possessing a firearm. (Lodged Doc. 1 at 164.)  In a second phase, on October 16, 2000, the jury found that Petitioner had previously been convicted of two prior serious felonies, as defined by Penal Code sections 667(b)-(I) and 1170.12 ("the Three Strikes Law"), and had served a prior prison term, as defined by Penal Code section 667.5. (<u>Id.</u> at 172.)


    **2. Post-Trial Proceedings**

On November 7, 2000, Petitioner, proceeding in Pro Se, moved for a new trial and the appointment of new cited multiple grounds: ineffective assistance of counsel, a lack of substantial evidence in support of the possession verdict, legal error with respect to the "Three Strikes" finding, challenges to evidentiary rulings, and the discovery of new evidence. (<u>Id.</u>)  In this motion, Petitioner noted that there were two witnesses who could give exculpatory testimony, who were unknown to him at the time of trial: (1) Larry Kelly, "a known old associate of Julie Robinson," who would testify that "he knew that gun had been supplied to Julie by her

1 | then husband Lester Robinson," and (2) "Chris," an
2 | unknown relative of the Robinsons, who, in her trial
3 | testimony, Julie Robinson stated told her that Lester
4 | owned a gun.  (<u>Id.</u> at 177-78.)  Petitioner included an
5 | investigator's report from an interview with Larry Kelly,
6 | where Kelly indicated that in fall 1999, he had observed
7 | Julie Robinson with a handgun she referred to as her
8 | "baby," and that was purchased for her by Lester
9 | Robinson.  (<u>Id.</u> at 183-84.)

10

11 |     Petitioner retained new post trial counsel, who
12 | examined the gun seized from the apartment, and
13 | discovered that the last digit of its serial number on
14 | the gun had not been recorded properly in the case files.
15 | (<u>Id.</u> at 205-06, 225-26.)  Once the appropriate serial
16 | number was recorded, it was discovered that the gun had
17 | been purchased by Terry Arnold of Sacramento in 1972.
18 | (<u>Id.</u> at 229-30, 235-36.)  In a subsequent interview,
19 | Arnold stated that the gun was stolen in or about 1990.
20 | (<u>Id.</u> at 272.)

21

22 |     Pursuant to an order of the trial court, Petitioner's
23 | newly retained counsel filed an amended motion for a new
24 | trial on December 15, 2000.  (<u>Id.</u> at 207-215.)  In that
25 | motion, Petitioner argued he was entitled to a new trial
26 | on multiple grounds: ineffective assistance of counsel,
27 | newly discovered evidence, the incorrect serial number on
28

the gun in evidence, legal error with respect to the
three strikes finding, improper jury instructions,
prosecutorial misconduct, and a lack of substantial
evidence in support of the possession verdict.  (Id. at
209-14.)   In this motion, Petitioner referred to
potential testimony of Larry Kelly and "Chris," as well
as of Ava Harper and Wanda West.  (Id. at 209-10.)   In
connection with the motion, Petitioner submitted an
investigator's report from an interview with West, where
she corroborated Kelly's statements about previously
having seen Julie Robinson with a gun.  (Id. at 245-46.)
He also included a declaration from Ava Harper, who said
she had been willing to testify at the trial that
Petitioner "would not have guns around" his sons and that
Julie Robinson's room "was always locked," but
Petitioner's trial counsel had refused to call her to
testify as a witness.  (Id. at 248-49.)

     Petitioner later filed supplementary materials in
support of this motion, which included a discussion of a
new potential witness, Ronnie Bankston.  Although
Petitioner and his counsel could not locate Bankston,
Petitioner stated that, while they were together in jail,
Bankston told him that Julie Robinson had admitted that
the gun in question was hers.  (Id. at 232, 257, 259.)

1    The trial court held evidentiary hearings and heard
2 argument on the motion for a new trial over the course of
3 seven days in the spring and summer of 2001, before
4 orally denying the motion on August 31, 2001.  (<u>Id.</u> at
5 11; Lodged Doc. 4 at 1313-1787.)

6

7    On April 3, 2002, the trial court ruled that the two
8 prior convictions the jury had found to be serious
9 felonies were indeed serious felonies under the Three
10 Strikes Law, and thus, on April 26, 2002, sentenced
11 Petitioner to a term of imprisonment of 25 years to life
12 under the Three Strikes Law, plus an additional year for
13 the prior prison term, as specified by Cal. Penal Code §
14 667.5.  (Lodged Doc. 1 at 13.)

15

16    **3.   Post-Judgment Proceedings**
17    Petitioner appealed both his conviction and sentence,
18 and the California Court of Appeal, Third Appellate
19 District, affirmed the Superior Court's judgment on March
20 5, 2004. (Lodged Doc. 2, App'x ("Ct. of Appeal Op.");
21 Lodged Doc. 5.)  Petitioner then filed a petition for
22 review in the California Supreme Court on April 8, 2004,
23 which that court summarily denied on May 12, 2004.
24 (Lodged Doc. 2.)

25

26    On July 29, 2004, Petitioner filed a petition for a
27 writ of habeas corpus in the California Superior Court
28

for Sacramento County.   (Lodged Doc. 8. at 6-32.)   The
Superior Court denied the petition on September 14, 2004,
(<u>Id.</u> at 2-5), and denied Petitioner's subsequent motion
for reconsideration on October 21, 2004.   (<u>Id.</u> at 1.)   On
April 11, 2005, Petitioner filed a habeas petition in the
California Supreme Court, which that court denied on May
24, 2006.   (Lodged Doc. 3.)

**C.   Petitioner's Claims**

Petitioner filed this petition on June 2, 2006,
asserting the following grounds for federal habeas corpus
relief:

1.   Petitioner is actually innocent of the crime of
which he stands convicted;

2.   The evidence presented at trial was insufficient
to support Petitioner's conviction;

3.   Petitioner's counsel on direct appeal was
ineffective;

4.   The trial court abused its discretion in denying
Petitioner's motion for a new trial;

5.   The trial court erred in concluding that
Petitioner's 1995 conviction for violating Cal. Penal
Code § 246.3 (discharging a firearm in a grossly
negligent manner) constituted a "prior strike," since
there was no finding that Petitioner fired a weapon
intentionally;

6.   The trial court erred in concluding that Petitioner's 1977 conviction for violating Cal. Penal Code § 245 (assault with a deadly weapon) constituted a prior strike, due to inadequate jury instructions in the 1977 trial;

7.   The representation of a court in 1995 that Petitioner had "no strikes" barred the trial court from concluding that the 1977 conviction constituted a prior strike;

8.   At trial, the prosecution knowingly used perjured testimony, failed to correct known false testimony, and/or failed to disclose exculpatory evidence;

9.   Cumulative prejudice requires reversal; and

10.  The trial court erred in considering incorrect and hearsay evidence in a probation report in sentencing Petitioner.

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's review of this Petition, as the Petition was filed after AEDPA's effective date.  Under 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States."

When considering a properly exhausted claim under AEDPA, a federal court must defer to a state court's holding unless it "'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Smith v. Curry, 580 F.3d 1071, 1079 (9th Cir. 2009), quoting 28 U.S.C. §§ 2254(d)(1)-(2).

"Clearly established Federal law" is defined as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Curry, quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles v. Mirzayance, --- U.S. ---, 129 S. Ct. 1411, 1419 (2009). However, "the Supreme Court need not have addressed an identical fact pattern to qualify as clearly established law, as 'even a general standard may be applied in an unreasonable manner.'" Jones v. Ryan,

583 F.3d 626, 635 (9th Cir. 2009), quoting Panetti v.
Quarterman, 551 U.S. 930, 953 (2007).

### III.   DISCUSSION

**A.   Petitioner's First Claim**

Petitioner's first claim is one of actual innocence.
On habeas review, the Superior Court found this issue
barred by the Court of Appeal's determination on direct
appeal that there was sufficient evidence to sustain his
conviction.   (Lodged Doc. 8 at 2.)

It is unsettled whether a freestanding actual
innocence claim is cognizable under federal law.  House
v. Bell, 547 U.S. 518, 554-55 (2006).  However, "a habeas
petitioner asserting a freestanding innocence claim must
go beyond demonstrating doubt about his guilt, and must
affirmatively prove that he is probably innocent."
Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997)
(en banc).  To do so, a petitioner must produce "new
reliable evidence- whether it be exculpatory scientific
evidence, trustworthy eye-witness accounts, or critical
physical evidence- that was not presented at trial."
Cook v. Schriro, 538 F.3d 1000, 1028 (9th Cir. 2008),
quoting Schlup v. Delo, 513 U.S. 298, 324 (1995).

Petitioner's only argument is that the testimonial
evidence and information about the gun not presented at

trial shows that the gun at issue belonged to Lester or Julie Robinson.  This evidence is not actually exculpatory, though.  Penal Code § 12021(a)(1) makes it unlawful for a felon to "own[], purchase[], receive  [], or ha[ve] in his or her possession or under his or her custody or control any firearm."  "Possession may be physical or constructive, and more than one person may possess the same contraband."  People v. Williams, 170 Cal. App. 4th 587, 625 (2009).  Thus, evidence that shows that the gun belonged to one of the Robinsons at one time or another does not preclude a finding that Petitioner was in violation of section 12021(a)(1) on the night of the incident.

    This evidence could have been used to impeach the Robinsons, and "impeachment evidence, by itself, can demonstrate actual innocence, where it gives rise to 'sufficient doubt about the validity of [the] conviction.'"  Sistrunk v. Armenakis, 292 F.3d 669, 676 (9th Cir. 2002) (quoting Carriger v. Stewart, 132 F.3d 463, 478 (9th Cir. 1997)).  But the evidence does not create such doubt here.  The trial court reviewed all of this evidence, and explained at length why none of it was persuasive, stating that "nothing makes sense in the way the defense is presenting it."  (Lodged Doc. 4 at 1796.) The court found the testimony offered by Wanda West and Larry Kelly was neither "particularly satisfying" nor "persuasive," as it contained many factual and logical

inconsistencies.  (Id. at 1795-1796.)  The court found
Ronnie Bankston's testimony not credible, as it was
improbable that Julie Robinson had confessed to Bankston
that she perjured herself, given that they did not have a
close relationship.  (Id. at 1800.)  Rather, upon
reviewing letters sent by Petitioner to Bankston, the
court concluded Petitioner was "obviously coaching Mr.
Bankston as to what he's to say and reminding him what to
say," (Id. at 1801), consistent with a "pattern" of
efforts "to fabricate and coach a witness."  (Id. at
1795.)

     The state court's conclusion that the evidence
presented by Petitioner does not demonstrate that "it is
more likely than not that no reasonable juror would have
convicted him," Schlup v. Delo, 513 U.S. 298, 326
(1995), was not objectively unreasonable, and therefore
Petitioner's claim of actual innocence is rejected.

**B.   Petitioner's Second Claim**

     Petitioner's second claim is that there was
insufficient evidence to support his conviction.  When
considering such a challenge, a court is to consider
whether "viewing the evidence in the light most favorable
to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a
reasonable doubt." Schad v. Ryan, 581 F.3d 1019, 1028

(9th Cir. 2009), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The Court of Appeal found that there was sufficient evidence to support a "rational inference" that Petitioner "possessed the gun on at least two occasions." (Ct. of App. Op. at 5.)  Specifically, it found that Julie Robinson's testimony that she had never put a label on the gun, combined with Petitioner's statement that she "wouldn't have to be worrying about those address labels anymore," supported an inference that Petitioner had possessed the gun and placed the label on it.  (Id. at 4.)  The Court of Appeal also found that Officer Prince's testimony as to Petitioner's behavior when he first arrived at the apartment, Petitioner's delay in answering the door, and the discovery of the television remote on the floor in the bedroom, supported an inference that Petitioner had possessed the gun at the time the police arrived, and had tried to hide it in the bedroom.  (Id. at 4-5.)

Petitioner claims that Julie Robinson's testimony was false, but offers no proof of this accusation.  He also argues that, if Julie Robinson was taking a shower or getting dressed at the time of the incident, it would have been "impossible" for him to hide the gun in her closet without her knowledge.  This argument does not negate the evidence noted by the Court of Appeal, along

with the evidence that the gun had been fired recently.

Considering this collective evidence in the light most

favorable to the prosecution, as it must on habeas

review, the Court cannot conclude no rational trier of

fact could have found the essential elements of the

crime.

Thus, the Court of Appeal's decision as to claim two

was not objectively unreasonable.

**C.   Petitioner's Third Claim**

Petitioner argues he was denied effective assistance

of counsel in pursuing the appeal of his conviction.  He

argues three errors constituted ineffective assistance.

First, he states that his counsel, Jerry D. Whatley,

"refused a request for oral arguments" from the Court of

Appeal.  Second, he argues that Whatley failed to

introduce evidence showing that Lester Robinson's

testimony was false.  Third, he argues that the arguments

that Whatley presented on appeal were insufficient.

These arguments were presented to both the Superior Court

and California Supreme Court in Petitioner's state habeas

corpus petitions.

To establish a constitutional violation based on

ineffective assistance of counsel, "a petitioner must

show that: (1) his [] counsel's performance 'fell below

an objective standard of reasonableness'; and (2) 'there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  <u>Jones</u>, 583 F.3d at 636, <u>quoting</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984). <u>See also</u> <u>Turner v. Calderon</u>, 281 F.3d 851, 872 (9th Cir. 2002) (stating that the <u>Strickland</u> standard applies to claims of ineffective assistance of appellate counsel). None of the three errors asserted meet this test.

**1) Failure to Request Oral Argument**

On January 7, 2004, the Court of Appeal issued a letter to counsel in the case stating that the court was "prepared to render a decision . . . without hearing oral argument."  (Lodged Doc. 7.)  If a written hearing was not requested by January 13, 2004, oral argument would be considered waived.  (<u>Id.</u>)  It appears no written request was ever filed, and the court issued a ruling on the matter without hearing argument.  On habeas review, the Superior Court concluded that Petitioner failed to show that the failure to request argument was either unreasonable or prejudicial.  (Lodged Doc. 8 at 4.)

The Superior Court's determination was not objectively unreasonable, as the failure to request oral argument meets neither of the two prongs of <u>Strickland</u>. The waiver of oral argument for appeals is commonplace, as demonstrated by the Court of Appeal's letter.  As another California district court has noted, "If counsel

was satisfied that the case was adequately presented in the briefs and record and that the decisional process would not have been significantly aided by oral argument, counsel was not obligated to request oral argument. Moreover, if the court of appeal had any question regarding the issues presented in the case, it would have requested oral argument." Socorro v. Thurman, No. C-94-1407 MHP, 1995 WL 125429, at *4 (N.D. Cal.  Mar. 17, 1995).  There is no evidence that suggests the decision not to request an oral argument in this case fell below the objective standard of reasonableness.

    As to the second Strickland prong, prejudice, the Ninth Circuit has held that the failure to appear at a scheduled oral argument is not *per se* prejudicial. United States v. Birtle, 792 F.2d 846, 848-49 (9th Cir. 1986).  Thus, the Court cannot conclude that the mere failure to *request* an oral argument is prejudicial in light of Petitioner's inability to show a reasonable probability that an oral argument would have had any effect on the Court of Appeal's decision.  See Ouellette v. McKee, No. 5:05-cv-892008, WL 4376374, at *19 (W.D. Mich. Sept. 22, 2008) (rejecting ineffective assistance claim based on failure to request oral argument on appeal for failure to show prejudice); Martin v. United States, Crim. No. 95-81165/ Civ. No. 03-71781, 2007 WL 5497196, at *12 (E.D. Mich. May 17, 2007) (same); United States v.

<u>Neeley</u>, No. 00 C 6119, 2001 WL 521841, at *5 (N.D. Ill.
May 14, 2001) (same).


###   2)    **Failure to Present Additional Evidence**

Petitioner argues that Whatley failed to address the
"post-trial" declarations of Larry Kelly and Wanda West
in his appeal challenging the sufficiency of the evidence
used to convict him.  In ruling on his habeas petition,
the Superior Court did not specifically address this
evidence.  If this evidence was not before the jury which
convicted him, though, it could not logically be relevant
to a challenge to the sufficiency of that evidence.
Thus, appellate counsel's failure to introduce this
evidence neither fell below the objective standard of
reasonableness nor had any prejudicial effect.


###   3) **The Sufficiency of Counsel's Arguments**

Petitioner argues that Whatley's argument as to the
sufficiency of the evidence against Petitioner was "brief
lip service" and that Whatley "failed to dig in and prove
it."  Specifically, he contends Whatley should have
raised certain arguments to challenge the credibility of
Julie Robinson and Officer Prince's testimony.  He also
argues that Whatley "failed to file and raise all grounds
and issues now being raised," including the denial of
Petitioner's motion for a new trial and alleged errors in
the counting of "strikes."

Whatley's failure to argue the appeal exactly in the manner which Petitioner would have liked does not establish ineffective assistance.  "An accused does not have a constitutional right to have his counsel press nonfrivolous points requested by his client if counsel decides as a matter of professional judgment not to press those points."  Bowen v. Foltz, 763 F.2d 191, 194 n.4 (6th Cir. 1985).  See also Chandler v. United States, 218 F.3d 1305, 1319 (11th Cir. 2000); United States v. Boigegrain, 155 F.3d 1181, 1187 (10th Cir. 1988); Rodriguez-Quezada v. United States, 06 Cr. 188/ 08 Civ. 5290, 2008 WL 4302518, at *3 (S.D.N.Y. Sept. 15, 2008). Having reviewed the brief submitted by Whatley to the Court of Appeal, (Lodged Doc. 6), the Court finds no merit in the argument that Whatley's performance was so deficient as to fall below the objective standard of reasonableness required by Strickland.

In a nearly fifty-page brief, Whatley addressed seven independent arguments as to why the conviction should be reversed, including over twenty pages devoted solely to the issue of the "counting of strikes," which Petitioner incorrectly states counsel failed to raise.  See Lodged Doc. 6 at 32-55.  The only issue unaddressed in the brief submitted by Whatley is the denial of the motion for a new trial.  Under California law, "A trial court has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly

exercised that discretion.  The determination of a motion
for a new trial rests so completely within the court's
discretion that its action will not be disturbed unless a
manifest and unmistakable abuse of discretion clearly
appears." People v. Davis, 10 Cal. 4th 463, 524 (1995).
Given this extremely deferential standard of review, and
the fact that the substantive issues in the motion for a
new trial were largely independently raised in the direct
appeal, it was neither unreasonable nor prejudicial for
his counsel to choose not to directly address the denial
of the motion.

    Since none of Petitioner's three arguments to
demonstrate ineffective assistance of appellate counsel,
the Superior Court's decision as to claim three was not
objectively unreasonable.

**D.   Petitioner's Fourth Claim**

    Petitioner's fourth claim is that the trial judge's
denial of the motion for a new trial constituted an abuse
of discretion, and thus violated his rights under the
Fourth, Fifth, Sixth, and Fourteenth Amendments.  "Even
if Petitioner[] is correct that the trial court erred or
abused its discretion in denying Petitioner's motion for
a new trial, 'federal habeas corpus relief does not lie
for errors of state law.'" Saesee v. Horel, No.
1:08-CV-01152 OWW JMD HC, 2009 WL 3857483, at *15 (E.D.
Cal. Nov. 17, 2009) (quoting Estelle v. McGuire, 502 U.S.

62, 67 (1991)).  See also Grande v. Herndon, No. CV 08-8020-SGL (MLG), 2009 WL 2407411, at *15 (C.D. Cal. Aug. 4, 2009); Schumann v. Patrick, No. EDCV 07-01181-RGK (VBK), 2009 WL 1270462, at *18-*19 (C.D. Cal. May 5, 2009).  In conducting habeas review, "federal courts generally are bound by a state court's construction of state laws, *including the denial of a motion for new trial under state law*, unless the petitioner can show an independent violation of his federal constitutional rights."  Washington v. Horel, No. CV 05-6043 JVS(JC), 2008 WL 4427221, at *4 (C.D. Cal. Sept. 30, 2008) (emphasis in original).

Petitioner appears to allege several independent constitutional violations within this claim, though. Since the Court must construe pro se habeas filings liberally, Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003), the Court, as the State has in its Answer, considers these allegations as independent challenges to his conviction.[1]

As a preliminary matter, in its ruling on his state habeas petition, the Superior Court determined that

---

[1] Several of the asserted grounds for a new trial (e.g., "all the issues raised and argued at new trial motion combined," "the cumulative effects of all the errors", the discovery of new evidence, the use of perjured evidence to convict him, and the legal errors relating to his prior convictions), however, are embodied by Petitioner's other claims and are thus addressed separately.

Petitioner procedurally defaulted on many of these claims.   The court held:

> With the exception of his ineffective assistance of appellate counsel [claim], all of Petitioner's other claims are assertions of error that occurred at his trial. These issues could have and should have been raised on appeal. . . . [T]hese claims are barred by [In re] Dixon [41 Cal. 2d 756, 759 (1953)].

(Lodged Doc. 8 at 2-3.)   Generally, a claim is procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds.   Spreitz v. Ryan, 617 F. Supp. 2d 887, 899 (D. Ariz. 2009), citing Coleman v. Thompson, 501 U.S. 722, 729-30.   However, the State has failed to raise this issue in its Answer to this habeas petition, and it is thus deemed waived.   Vang v. Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003.)

### 1. "Failure of Trial Court to File" Various Charges

Petitioner argues that his initial trial was tainted by the trial court's failure to bring various charges against Julie and Lester Robinson.   Petitioner specifically argues that both Robinsons should have been charged with perjury, and that Julie Robinson should have been charged with possession of stolen property and assault of a custodial officer under California Penal Code section 245.3.   Whether or not to charge the Robinsons was a matter of prosecutorial discretion, and "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."   Linda

R.S. v. Richard D., 410 U.S. 614, 619 (1973); Adnan v. Santa Clara County Dep't of Corrections, No. C 02-3451 CW, 2002 WL 32069635, at *3 (N.D. Cal. Sept. 17, 2002). Thus, any failure to bring these charges against the Robinsons did not violate Petitioner's constitutional rights.

### 2. Testimony of Officer Wyley

Petitioner contends Officer Wyley should not have been allowed to testify as to his observations on the night of the incident without "first producing a Police report of any statement of facts of what he was to testify too [sic]."   The United States Constitution imposes no such a limit on Wyley's testimony, and thus Petitioner has failed to state a basis for habeas relief.

### 3. Motion to Suppress

Petitioner argues the trial court erred in denying his motion to suppress the evidence seized from "Julie Robinson['s] private room, from her private property with no arrest being made for [violation of Cal. Penal Code §] 246.3, or any charges on her," as the fruits of an illegal search and seizure.   Petitioner lacks standing to assert a violation of Julie Robinson's Fourth Amendment rights, however.   A person has Fourth Amendment standing "only if there has been a violation 'as to him,' personally."   United States v. SDI Future Health, Inc., 568 F.3d 684, 695 (9th Cir. 2009).   Since Petitioner does

not argue that *his* reasonable expectation of privacy has been infringed, he does not state a basis for habeas relief.

## 4. Ineffectiveness of Trial Counsel

Petitioner argues he should have been granted a new trial due to the ineffectiveness of his trial counsel. The standard for ineffective assistance of trial counsel is the same as the <u>Strickland</u> standard applied to Petitioner's claim of ineffective assistance of appellate counsel above.  Petitioner argues several of his trial lawyer's actions or inactions constituted ineffective assistance.  The trial court considered these claims in Petitioner's motion for a new trial, and was "satisfied clearly that any failings of [counsel] d[id] not reach the level of ineffective assistance.  And to the extent any decision may be questioned, it would not have caused or brought about a different result if it was handled differently."[2]  (Lodged Doc. 4 at 1802.)

### a) Examination of Julie Robinson

Petitioner argues that his trial attorney improperly "fail[ed] to impeach Julie Robinson," refused "to recall her over her perjury," and failed to introduce a taped

---

[2]Petitioner raised this issue in his habeas petition before the Superior Court, but that court did not address it.

recording of an interview of Robinson by someone in the District Attorney's office.

The Court has reviewed the transcript of Julie Robinson's testimony, including the cross-examination and two rounds of re-cross-examination. (Lodged Doc. 4 at 437-80, 501-05, 509-10.)  While counsel did not seek to introduce the tape recording at issue, he did cross-examine Julie Robinson about that interview.  (Id. at 439-442.)  The depth and breadth of counsel's questioning and attempts at impeachment were sufficient,  and did not fall below an objective standard of reasonableness.

### b) Examination of Lester Robinson

Petitioner also argues that his trial attorney improperly "fail[ed] to impeach Lester Robinson," by refusing to confront him about a conversation that Petitioner and Lester Robinson had in 2000.  Petitioner claims that  Lester Robinson admitted to owning the gun at issue in that conversation, but Lester Robinson maintains that Petitioner attempted to solicit false testimony at that time.

Outside the presence of the jury, Petitioner's trial counsel objected to the late introduction of Lester Robinson as a rebuttal witness at all, and Defendant repeatedly interrupted his lawyer while the latter was speaking to the trial judge about this issue.  (Lodged

Doc. 4 at 776-777, 782-84.)   Nonetheless, his attorney
successfully persuaded the trial judge to conduct a
preliminary examination of Lester Robinson, outside the
presence of the jury, pursuant to California Evidence
Code section 402.  (Id. at 782-83.)

The Court has reviewed the transcript of the direct
and cross-examinations of Lester Robinson, both outside
the presence of the jury (id. at 828-842) and in the
presence of the jury (id. at 863-873, 874-75).  The
cross-examination included attempts to impeach Mr.
Robinson's testimony as to the disputed conversation.
(Id. at 869-871.)   The depth and breadth of the
questioning and attempts at impeachment were sufficient,
and did not fall below an objective standard of
reasonableness.

### c) Disclosure of Parole Status

Petitioner claims that his lawyer's disclosure at
trial of Petitioner's parole status at the time of his
arrest constituted ineffective assistance.  At the
hearing on the motion for a new trial, trial counsel
explained that Petitioner actually urged the introduction
of his parole status, despite counsel's initial
disinclination, in order to provide a rationale for why
Petitioner was sweating when the police arrived at his
apartment. (Lodged Doc. 4 at 1544-54.)  Given this
explanation, the decision to disclose Petitioner's parole

status to the jury did not fall below an objective
standard of reasonableness.

### d) Failure to Call Ava Harper as a Witness

Petitioner claims that his trial counsel failed "to
treat Ava Harper with any respect, blowing spittle in her
face while screaming at her in front of jurors" and
improperly failed to call her as a witness.
"Disrespect" toward Ms. Harper does not demonstrate a
constitutional infirmity in Petitioner's conviction.
Petitioner argues that Harper would have testified (1)
that Petitioner was actually at her home, dropping off
his daughter, at the time of the incident, and (2) that
her children had told her that the door to the bedroom
where the gun was found was always locked.  Counsel's
decision not to call Harper as a witness to testify to
these two facts neither fell below an objective standard
of reasonableness nor was it material.

As to Harper's "alibi" testimony, Harper indicated
that, if she had been called to testify before a jury,
she would have stated that Petitioner arrived at her home
at "about 9:00" on the night in question, and left
shortly thereafter.  (Lodged Doc. 4 at 1409, 1411, 1422.)
Freeman reported hearing the gunshot at 9:40 p.m., as
noted above.  Thus, Harper's testimony did not establish
an "alibi."  As to Harper's potential testimony that her
children told her the door was kept locked, the trial

court accurately noted that such testimony would be hearsay and thus inadmissible. (Lodged Doc. 4 at 1790.) In light of the limited probative value of Harper's testimony, trial counsel's decision not to call her as a witness did not violate either prong of the <u>Strickland</u> standard.

### e) Failure to Properly Question Betty (aka Angel) Rathbun

Petitioner claims that his lawyer failed to "properly question" his daughter, Betty (aka Angel) Rathbun, about being dropped off at Harper's house on the night of the incident.  Angel testified as a Defense witness at the trial, but did not give any testimony about the night of the incident.  (Lod. Doc. 4 at 881-893, 1004-1008.)

There is no indication that Angel would have given testimony any different from that offered by Ava Harper as to when Petitioner dropped Angel off at her home.  As noted above, this testimony was immaterial, as significant time elapsed between Petitioner dropping Angel off and the reported gunshot.  Accordingly, any failure to  question Angel more thoroughly was nonprejudicial.

### f) Failure to Call Betty Fielding as a Witness

Petitioner claims that the failure to call his mother, Betty Fielding, as a witness constituted

ineffective assistance.  He argues that she had "highly relevant evidence over the gun's true ownership."

In connection with the hearing on the motion for a new trial, Betty Fielding testified as to what, had she been called as a witness, she would have told the jury. She discussed a telephone conversation she had had with Julie Robinson shortly after Petitioner was arrested, in which Julie said "She didn't know why they took Stevie in to begin with because they had taken a gun that was hers from the bedroom. Stevie didn't have nothing to do with it.  It wasn't Stevie's gun, and she didn't know why they took Steven in for sure." (Lod. Doc. 4 at 1359-60.)  She claimed that Julie had told her that Lester Robinson had obtained the gun for her.  (Id. at 1374.)

At the same hearing, Petitioner's trial counsel explained that he did not put Fielding on as a witness because her testimony would be substantially the same as the testimony of Jason Terrel. (Lod. Doc. at 1571.)  He stated, "Rather than have cumulative testimony, the exact same from a person most interested in having her son found not guilty, the mother of the Defendant, I chose to put on the nephew of the Defendant."  (Id.)

Given the limited relevance of Fielding's testimony, counsel's strategic decision not to call her as a witness was neither prejudicial, see Matylinsky v. Budge, 577

F.3d 1083, 1097 (9th Cir. 2009) ("[a] petitioner cannot show prejudice for failure to present what is most likely cumulative evidence"), nor did it fall below an objective standard of reasonableness, <u>see</u> <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1174 (9th Cir. 1998) (holding "it was not unreasonable for counsel not to pursue such testimony when it was largely cumulative of the testimony" already offered).

**E.   Petitioner's Fifth, Sixth, and Seventh Claims**

Petitioner's fifth, sixth, and seventh claims challenge the applicability of the "three strikes" sentencing enhancement to him, as defined by California Penal Code sections 667(b)-(I) and 1170.12.  His fifth claim is that his 1995 conviction for violating Penal Code section 246.3 should not have been counted as a serious felony, and thus a "strike", against him.  His sixth and seventh claims are that his 1977 conviction for violating Penal Code section 245(a) should not have been counted as a strike.   All three of these claims were considered by the California Court of Appeal on direct appeal and rejected.

**1. The 1995 Conviction**

On July 3, 1995, Petitioner pled guilty to and was convicted of violating California Penal Code section 246.3, a felony discharge of a firearm in a negligent manner.  (Lodged Doc. 4 at 1150-53.)  Petitioner argues

that since he did not "intentionally" fire a gun in that case, it did not constitute a serious felony under the Three Strikes Law.   Under California Penal Code section 1192.7(c)(8), a "serious felony" includes "any felony in which the defendant personally uses a firearm."   On direct appeal, the California Court of Appeal rejected Petitioner's argument that a conviction for the negligent discharge of a gun does not constitute a serious felony under section 1192.7(c)(8), concluding that the use of the phrase "personally uses" in the statute does not imply that the use must be intentional.   (Ct. of Appeal Op. at 18-20.)[3]   Petitioner's fifth claim is thus a challenge to a state court's interpretation of state law, and not cognizable in federal habeas proceedings. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

---

[3]   Although Petitioner addressed this issue in his habeas petition before the Superior Court, that Court did not discuss Petitioner's challenges to the calculation of prior strikes.

### 2.   The 1977 Conviction[4]

On September 30, 1977, Petitioner pled guilty to violating California Penal Code section 245(a), assault with a deadly weapon.   (Lodged Doc. 4 at 1145-46.) Petitioner makes three arguments as to why this conviction should not have counted as a prior "strike". First, he claims that the jury in his 2001 trial was not properly instructed as to what constitutes "personal use" of a firearm.   Second, he claims there was inadequate evidence to find he had "personally" used a firearm in the 1977 case.   Third, he argues that the representation of the presiding judge in his 1995 case that he had no prior strikes estopped the state from counting his 1977 conviction as a strike.[5]

_____

[4]    On February 19, 2010, Petitioner filed a Motion for Discovery, seeking "Discovery on California Department of Corrections records on Petitioner's B-87189-Z commitment."   Parties in habeas cases are only entitled to discovery upon a showing of good cause. <u>Bittaker v. Woodford</u>, 331 F.3d 715, 728 (9th Cir. 2003). Petitioner only seeks discovery in relation to his contention that the state court inappropriately calculated the 1977 conviction as a "strike" against him under California's Three Strikes Law.   As discussed more fully below, this is a challenge to a state court's interpretation of state law, and not cognizable in federal habeas proceedings. Thus, Petitioner has failed to show good cause as to why he should be entitled to discovery, and the Motion for Discovery is DENIED.

[5]  In his traverse, Petitioner also argues, for the first time, that the trial court judge, as opposed to the jury, impermissibly determined that the 1977 conviction counted as a "strike," in violation of the Sixth Amendment and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).   (Traverse at 13-14, 20-21.)   As noted above, the jury in Petitioner's 2000 trial found that Petitioner had previously been convicted of two prior serious felonies,

(continued...)

The Court of Appeal concluded that Petitioner's failure to object to the trial court's instructions as to "personal use" meant this claim was procedurally barred on habeas review.  (Cal. Ct. App. Op. at 23.)  As such, this Court cannot consider this claim.  <u>Hill v. Roe</u>, 321 F.3d 787, 789 (9th Cir. 2003).

The 2000 jury had before it an authenticated copy of the transcript of the preliminary hearing in the 1977 crime.  (Lod. Doc. 4 at 1147-48.)  Included in this transcript was sworn testimony of a witness that Petitioner fired a rifle into a victim's stomach. (Lod. Doc. 1 at 699-700.)  This evidence was sufficient for the jury to conclude that Petitioner "personally used" a gun in the 1977 crime.

Finally, in the course of his 1995 criminal proceedings, Petitioner claims the following two colloquies occurred:

> Petitioner: I have no strikes, your Honor, right?

> The Court:  Right.

> . . .

> Petitioner: I want to make sure I don't have no previous strikes. There will be one next time, right?

---

[5](...continued)
as defined by the Three Strikes Law, and thus there was no Sixth Amendment violation.

1        The Court: Right.

2  Petitioner claims that these statements estopped the use

3  of the 1977 conviction as a serious felony strike against

4  him in 2002.  The Court of Appeal rejected this claim on

5  direct review, holding that Petitioner had failed to

6  establish the elements of equitable estoppel under

7  California law.  (Ct. of App. Op. at 26-27.)  On habeas

8  review, this Court must defer to review the California

9  Court of Appeal's application of California law as to

10 estoppel.  See, e.g., Middleton v. Cupp, 768 F.2d 1083,

11 1085 (9th Cir. 1985) (noting federal habeas relief "is

12 unavailable for alleged error in the interpretation or

13 application of state law . . .or when a petitioner merely

14 alleges that something in the state proceedings was

15 contrary to general notions of fairness . . . .");

16 Carrizosa v. Woodford, No. 05CV1935 IEG, 2007 WL 2873629,

17 at *6, n. 10 (S.D. Cal. Sept. 28, 2007) (equitable

18 estoppel is a question of state law and cannot be used to

19 support habeas relief).

20

21       The Court of Appeal's decisions as to the use of

22 Petitioner's prior convictions to enhance his sentence

23 were thus not contrary to or objectively unreasonable

24 under clearly established federal law.

25

26

27

28

                              38

**F.   Petitioner's Eighth Claim**

Petitioner's Eighth Claim is that the prosecution knowingly used or failed to correct perjured testimony and false evidence in obtaining his conviction.

A conviction obtained using knowingly perjured testimony violates a defendant's due process rights if "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." Jackson v. Brown, 513 F.3d 1057, 1071-72 (9th Cir. 2008) (quoting Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (en banc)).

Petitioner argues that both Julie and Lester Robinson presented false testimony at trial.  He has failed, however, to demonstrate any of the three above-listed elements.  There is no evidence that demonstrates the Robinsons' testimony was actually false.  While there is evidence which casts doubt on the credibility of their testimony, this is insufficient to establish falsity. See United States v. Zuno-Arce, 339 F.3d 886, 890 (9th Cir. 2003).  Petitioner neither argues nor produces any evidence which suggests the prosecution had any reason to doubt the truth of the Robinsons' testimony.

Even if this testimony were false and the prosecution knew so, though, the testimony at issue was not material.

"[F]alse testimony is material, and therefore prejudicial, if there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Schad v. Ryan, 581 F.3d 1019, 1028 (9th Cir. 2009) (quoting Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (en banc)). Petitioner argues the Robinsons lied about ownership of the gun. Since, as the Superior Court noted, "ownership and possession are legally distinct," (Lodged Doc. 8 at 2), it was not an unreasonable application of clearly established law for the Superior Court to find the Robinsons' testimony as to ownership was immaterial.

Petitioner also challenges the incorrectly recorded serial number on the gun in evidence. There is no dispute that the serial number as recorded was incorrect, nor that the prosecutor had reason to suspect that the serial number was incorrect. See Lod. Doc. 4 at 1253-54 (discussion of possibly incorrect serial number before trial court). The error was not material, though, as demonstrated by the fact that the correct identification of the serial number has not yielded any exculpatory evidence. As discussed above, *ownership* of the gun was not necessary for Petitioner to be convicted of *possessing* the gun. Thus, information tending to suggest that someone other than Petitioner owned the gun was not exculpatory.

40

**G.    Petitioner's Tenth Claim**

Petitioner's tenth claim challenges his sentencing, in that the trial court judge failed to remove "non-proven, dismissed, and non-testified to hearsay" statements contained in his probation report, and failed to "add positive mitigating facts" to that report.

Before his sentencing, after his motion for a new trial was denied, Petitioner, via counsel, filed a motion to "compel correction" of the probation report.  (Lod. Doc. 1 at 543-545.)  The trial court held a hearing on this motion, and made several corrections to the report based on a detailed, independent review of the evidence. (Lod. Doc. 4 at 2015-2057.)  The trial judge's conclusion that the remainder of the probation report was factually accurate was not an unreasonable determination of the facts based on the evidence before him.  See Taylor v. Evans, No. CIV S-05-0860 JAM GGH P, 2009 WL 1060511, at *9 (E.D. Cal. Apr. 20, 2009) (state court's determination of validity of probation report is entitled to deference under AEDPA).

There was no constitutional requirement that the court add the alleged mitigating evidence to the Probation Report, given that the evidence was presented to the sentencing judge.  (Lodged Doc. 4 at 2037-2038).

41

Accordingly, the state court's use of the probation report did not violate clearly established federal law.

**H.   Petitioner's Ninth Claim**

Petitioner claims he has suffered cumulative prejudice from the totality of the errors in his case. For the above reasons, no errors prejudiced Petitioner. Thus, he did not suffer cumulative prejudice.

### IV.   CONCLUSION

For the foregoing reasons, Petitioner's Motion for Discovery and Petition for Writ of Habeas Corpus is DENIED.

Dated: <u>March 2, 2010</u>

<u>                              </u>
VIRGINIA A. PHILLIPS
United States District Judge